**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marta DeSoto,<br><br>  Plaintiff,<br><br>v.<br><br>Gregory McKay,<br><br>  Defendant. | No. CV-16-00996-PHX-JAT<br><br>**ORDER** |

Pending before the Court are: (1) Defendant Gregory McKay's Motion to Strike and Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), (Doc. 23); (2) Plaintiff Marta DeSoto's Response to Defendant's Motion to Strike and Motion to Dismiss, (Doc. 24); and (3) Defendant's Reply to Plaintiff's Response to [Defendant's] Motion to Dismiss, (Doc. 25). The Court now rules on the Motions.

**I.   BACKGROUND**

From 2009 to 2015, Plaintiff was employed on an independent contractor basis by the Arizona Department of Child Safety ("DCS") and, DCS's predecessor agency, Child Protective Services ("CPS"). (Doc. 21 at ¶ 4; Doc. 24 at 4 n.3). Plaintiff was originally hired as a clinical and forensic neuropsychologist, and in 2015, she was appointed as the Unit Consultant for DCS's Glendale field office. (Doc. 21 at ¶ 4). In late 2015, following her response to a DCS request for proposal, Plaintiff accepted DCS's offer to provide various psychological evaluation services for its clients. (*Id.*). Plaintiff's contract-at-issue commenced on January 1, 2016. (*Id.*).

In February 2016, KNXV, a local television station, reported about Plaintiff's marriage to Jacob Wideman. (*Id.* at ¶ 16). In 2004, Plaintiff treated Mr. Wideman while she was a psychology associate employed by the Arizona Department of Corrections and Mr. Wideman was a prisoner. (*Id.* at ¶¶ 6, 7).[1] In May 2010, Plaintiff became engaged to Mr. Wideman and married him sometime thereafter. (*Id.* at ¶¶ 9, 14). As part of KNXV's report, the television station provided DCS with documentation relating to Plaintiff's marriage. (*Id.* at ¶ 15).

Following the KNXV report, DCS terminated Plaintiff's contract effective February 11, 2016 and informed Plaintiff that the "termination was done in the best interest of the State." (*Id.* at ¶ 16). Plaintiff alleges that DCS Director Gregory McKay had direct personal participation in terminating Plaintiff's contract. (*Id.*). Prior to the termination, Plaintiff "never received any complaints about her job performance." (*Id.* at ¶ 4).

Plaintiff alleges that Defendant McKay, while acting in his individual capacity, deprived Plaintiff of her "First Amendment Right of Intimate Association and Fourteenth

---

[1] Defendant attaches a "copy of the February 2016 media reporting by local ABC television station, KNXV, channel 15" to its Motion to Dismiss as Exhibit 1. (Doc. 23 at 4). Citing to *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001), Defendant argues that the Court may consider this extrinsic evidence because Plaintiff referenced the media in her FAC. (Doc. 23 at 3–4). Defendant, however, misreads *Lee*. "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a [Federal] Rule [of Civil Procedure] 12(b)(6) motion." *Lee*, 250 F.3d at 688 (quotations omitted). Under one exception to this rule, however, "a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Id.* (quotations omitted). "If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)).

Here, Defendant is asking the Court to review evidence that Plaintiff did not attach to her FAC, and Plaintiff's FAC does not necessarily rely on the information contained in the evidence. Although a court may take judicial notice of news publications, the Ninth Circuit Court of Appeals ("Ninth Circuit") has generally restricted notice of these publications to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 578 F.3d 1016, 1022 (9th Cir. 2009) (quoting *Premier Growth Fund v. All. Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2001)). Consequently, the Court declines to consider the contents of Defendant's Exhibit 1, (Doc. 23-1), in ruling on Defendant's Motions.

1  Amendment Liberty Interest in [the] Right to Marry and Right of Privacy" in violation of
2  42 U.S.C. § 1983 (2012). (*Id.* at 8).[2]
3  **II.   MOTION TO STRIKE**
4  Defendant argues that, pursuant to Federal Rule of Civil Procedure ("Federal
5  Rule") 12(f), the Court should strike "from 1:23–3:4, as well as [paragraphs] 10–12 and
6  []14 of the 'Factual Allegations' section of" Plaintiff's FAC. (Doc. 23 at 7).
7      **A.   Legal Standard**
8  Federal Rule 12(f) provides that this Court may strike from a pleading "any
9  redundant, immaterial, impertinent, or scandalous matter." While the determination to
10 strike is in the discretion of the trial court, a motion to strike "should not be granted
11 unless it is clear that the matter to be stricken could have no possible bearing on the
12 subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*,
13 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *see Yount v. Regent Univ., Inc.*,
14 No. CV-08-8011-PCT-DGC, 2009 WL 995596, at *11 (D. Ariz. Apr. 14, 2009) ("[E]ven
15 a properly made motion to strike is a drastic remedy which is disfavored by the courts
16 and infrequently granted." (quoting *Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624
17 v. Va. Int'l Terminals*, 904 F. Supp. 500, 504 (E.D. Va. 1995))).
18 The defendant bears the burden of persuading this Court that the relevant
19 paragraphs and lines should be stricken. *XY Skin Care & Cosmetics, LLC v. Hugo Boss
20 USA, Inc.*, No. CV-08-1467-PHX-ROS, 2009 WL 2382998, at *1 (D. Ariz.
21 Aug. 4, 2009). The defendant must show (1) that the material is redundant, immaterial,
22 impertinent, or scandalous or that the requested relief is unavailable and (2) how such
23 material will cause prejudice. *Id.*; *see also Am. Buying Ins. Servs., Inc. v. S. Kornreich &
24 Sons, Inc.*, 944 F. Supp. 240, 249–50 (S.D.N.Y. 1996) (noting that motions to strike have
25 frequently been denied "when no prejudice could result from the challenged allegations,
26 even though the matter literally is within the categories set forth in [Federal] Rule 12(f)"
27
28     [2] Although Plaintiff includes all three constitutional rights under one count, the Court notes that these are separate constitutional rights with separate legal standards.

(quotations omitted)). Any doubt regarding the redundancy, immateriality, impertinence, scandalousness, or insufficiency of a pleading must be decided in favor of the non-movant. *XY Skin Care*, 2009 WL 2382998, at *1.

### B.     Analysis

Defendant argues that portions of pages 1–3 as well as paragraphs 10–12 and 14 of Plaintiff's FAC are immaterial and impertinent. (Doc. 23 at 4–7). Defendant alleges that pages 1–3 contain "immaterial case law citations and legal argument" while the specified paragraphs contain "nothing but immaterial and impertinent administrative matters." (*Id.* at 5–6). In response, Plaintiff argues that the specified portions of her FAC provide pertinent background information, and Defendant has not shown he will suffer any prejudice if the Court denies his Motion to Strike. (Doc. 24 at 2–6).

"'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07 (2d ed. 1990)), *rev'd on other grounds*, 510 U.S. 517 (1994). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issue in question." *Id.* (quoting Wright & Miller § 1382, at 711). At this early stage in this proceeding, the Court cannot say that the claims contained in paragraphs 10–12 and 14 have no bearing on the subject matter of the litigation. It is possible that complaints made to the Arizona Board of Psychologist Examiners could have some relevance to Plaintiff's claims. On the other hand, Plaintiff's nearly three-page legal argument involving marital rights is immaterial and does not belong in a complaint. However, Defendant has not shown—and has not argued—that these legal arguments and case citations are so prejudicial that they should be stricken pursuant to Federal Rule 12(f). *See Vesecky v. Matthews (Mill Towne Ctr.) Real Estate, LLC*, No. CV-09-1741-PHX-JAT, 2010 WL 749636, at *2 (D. Ariz. Mar. 2, 2010) (declining to grant a defendant's motion to strike because of the defendant's failure to demonstrate prejudice). Thus, the Court denies Defendant's Motion to Strike.

### III. MOTION TO DISMISS PURSUANT TO FEDERAL RULE 41(B)

Defendant moves to dismiss this action pursuant to Federal Rule 41(b) on grounds that paragraphs 4, 6–9, 14, and 18–19 of Plaintiff's FAC do not comply with Federal Rules 8(a)(2), 8(d)(1), and 10(b).

Dismissal under Federal Rule 41(b) is "a sanction to be imposed only in extreme circumstances." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004). Therefore, a court considering a Federal Rule 41(b) motion to dismiss must consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). Neither party addresses these factors. Although the Court recognizes Defendant's argument that Plaintiff did not follow some of the Federal Rules in drafting her FAC, the Court finds that Plaintiff's noncompliance has not significantly interfered with management of the Court's docket, the case can be disposed of expeditiously on the merits, and Defendant is unlikely to be prejudiced by denial of his Motion. Thus, the Court denies Defendant's Federal Rule 41(b) Motion to Dismiss.

### IV. MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(B)(6)

To survive a Federal Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule 8(a)(2). Federal Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility exists if the pleader sets forth factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but requires

more than a sheer possibility that a defendant acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Federal Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," as "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. at 555 n.3 (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1202, at 94–95 (3d ed. 2004)). Thus, Federal Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In ruling on a Federal Rule 12(b)(6) motion to dismiss, a court must construe the facts alleged in the complaint in the light most favorable to the drafter and must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *see also Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1053 (9th Cir. 2011). However, a court need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### A. Defendant's Personal Involvement of Plaintiff's Constitutional Injury

Defendant contends that Plaintiff's claims fail because Plaintiff's FAC "does not allege facts that show that [Defendant] was personally involved in the deprivation of [Plaintiff's] civil rights, nor does [Plaintiff's FAC] permit this Court to infer more than the mere possibility that [Defendant] may have been." (Doc. 23 at 8).

Plaintiff brought her claims under 42 U.S.C. § 1983. Section 1983 "has a

causation requirement, with liability extending to those state officials who subject[ ], or cause[ ] to be subjected, an individual to a deprivation of his federal rights. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quotations omitted). This "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). However, sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Id.* at 634 (citation omitted).

Here, Plaintiff has alleged:

> Plaintiff is informed and believes and therefore alleges that Defendant McKay participated in, directed, set in motion, acquiesced in, was consulted about, participated in, knew of, ratified or approved the termination of Plaintiff's contractual relationship with DCS and therefore had direct personal participation in the deprivation of Plaintiff's constitutional rights of freedom of intimate association, Fourteenth Amendment liberty interest in the right to marry and right of privacy.

(Doc. 21 at ¶ 16). Taking Plaintiff's allegations as true, Plaintiff's injury—her termination due to public revelations of her marriage—is directly traceable to Defendant, who was serving as DCS's Director at the time of her injury. The Court finds that Plaintiff's claims against Defendant sufficiently allege personal conduct.

### B. Defendant's Qualified Immunity

In the alternative, Defendant argues that Plaintiff's § 1983 claims fail because he is protected by qualified immunity. (*See* Docs. 23 at 9–14; 25 at 1–11). The doctrine of qualified immunity insulates government agents from liability for actions taken in good faith while exercising discretionary authority in their official capacity. *Sonoda v.*

1 *Cabrera*, 255 F.3d 1035, 1042 (9th Cir. 2001). In a suit against a government official under § 1983, a court performs a two-part analysis. To succeed on such a claim, a plaintiff must show, "first, [that she] suffered a deprivation of a constitutional or statutory right; and second [that such] right was clearly established at the time of the alleged misconduct." *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam)). A court may decide for itself which step of the analysis to address first, for failure on either step will negate a plaintiff's ability to recover. *Id.* at 1090. Therefore, if a court determines that the constitutional right was not clearly established at the relevant time, the court will grant the defendant government official's motion to dismiss. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Hamby*, 821 F.3d at 1090.

A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). While "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), the Supreme Court has clarified that a government official is entitled to qualified immunity unless existing case law "*squarely governs* the case here," *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)). In pursuing this inquiry, a court looks first to Supreme Court and Ninth Circuit law existing at the time of the alleged act. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent from the appellate level, a court should look to available decisions of other circuits and to district courts within its own circuit to ascertain whether the law is clearly established. *Id.*

### 1.     Right to Intimate Association[3]

Defendant argues that the Court should dismiss Plaintiff's § 1983 intimate association claim because this right was not clearly established "in the specific context of this case." (Doc. 23 at 13). The Supreme Court has recognized that the U.S. Constitution offers protection for two types of associations: (1) the right to expressive association; and (2) the right to intimate association. *See Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619–20 (1984)). The right to expressive association protects the right to associate with others "for the purpose of engaging in those activities protected by the First Amendment— speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts*, 468 U.S. at 617–18. On the other hand, the right to intimate association protects "choices to enter into and maintain certain intimate human relationships . . . against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.* at 617–18.

Although it is well-settled that the right to expressive association is protected by the First Amendment, *see Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 68 (2006), "nature and the extent of the right are hardly clear, and . . . the source of the intimate association right has not been authoritatively determined", *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 61 (2d Cir. 2014) (quotations omitted). Nonetheless, the Ninth Circuit has held that the right to intimate association is protected by the Fourteenth Amendment's Due Process Clause. *See IDK, Inc. v. Cty. of Clark*, 836 F.2d 1185, 1192 (9th Cir. 1988) ("In protecting certain kinds of highly personal relationships, the Supreme Court has most often identified the source of the protection as

---

[3] Plaintiff conflates the right to intimate association with the right to marry and right to privacy. In fact, besides the case law and vague legal reasoning Plaintiff wrongly incorporated within her FAC, Plaintiff's pleadings contain no analysis of the constitutional right to marry. (*See* Doc. 24 at 11–16). For the reasons stated below, the Court believes the right to intimate association and the right to marry are distinct. *See also Quiroz v. Short*, 85 F. Supp. 3d 1092, 1107–12 (N.D. Cal. 2015) (analyzing the right to intimate association and the right to marry separately). Thus, although Plaintiff does not supply separate arguments, the Court presents its analysis for each right separately.

the due process clause of the fourteenth amendment, not the first amendment's freedom to assemble." (citing *Zablocki v. Redhail*, 434 U.S. 374, 383–86 (1978))). *But see Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999) ("Though the matter is not free from doubt, we think a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association."); *Adkins v. Bd. of Educ. of Magoffin Cty., Ky.*, 982 F.2d 952, 955–56 (6th Cir. 1993) (recognizing a right to intimate association under the First Amendment); *Singleton v. Cecil*, 133 F.3d 631, 635 (8th Cir. 1998) (same); *Parks v. City of Warner Robins, Ga.*, 43 F.3d 609, 615–16 (11th Cir. 1995) (same).

As with the right to privacy, the Supreme Court and Ninth Circuit have not definitively prescribed the extent of constitutional protections for abridgements of the right to intimate association within public employment. *See, e.g.*, *Hollenbaugh v. Carnegie Free Library*, 439 U.S. 1052, 1055 (1978) (Marshall, J., dissenting) (dissenting from the denial of certiorari where the district court had upheld a public employer's decision to discharge a librarian and custodian for cohabitating in an adulterous relationship and recognizing that the Court has "never demarcated the precise boundaries of this right [to privacy]"). However, the Supreme Court has generally recognized greater deference towards the government when it acts as an employer. *See Waters v. Churchill*, 511 U.S. 661, 675 (1994) (plurality opinion) ("The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer.").

Here, Plaintiff argues that her right to intimate association with her husband was so clearly established that a reasonable official would have understood that Defendant's conduct violated that right given the specific factual context. (Doc. 24 at 11–16). In support of this argument, however, Plaintiff cites to no Supreme Court or Ninth Circuit precedent. Instead, Plaintiff first cites to *Adler v. Pataki*, in which the Second Circuit Court of Appeals ("Second Circuit") held that a plaintiff-employee stated a valid claim

against a New York State public agency that terminated him because his wife filed a lawsuit against the New York Attorney General. 185 F.3d at 44–45. However, unlike the Ninth Circuit, the Second Circuit based its analysis on a First Amendment right of intimate association because the agency's "adverse action was taken solely against [the plaintiff] in retaliation for *conduct* of the other spouse." *Id.* at 44 (emphasis added). Here, unlike in *Adler*, Plaintiff has not alleged any conduct by her spouse that motivated Defendant's action. Instead, Plaintiff has only claimed that her marriage to Mr. Wideman was the sole catalyst for Defendant's decision. (Doc. 21 at ¶ 19).

The other cases Plaintiff cites involve similar factual contexts as *Adler* and are, thus, quite different from the facts presented in Plaintiff's case. For example, Plaintiff cites to *Adkins v. Board of Education of Magoffin County, Kentucky*, in which a school superintendent refused to recommend a plaintiff for continued employment within the school district because plaintiff's husband, a principal within the district, failed to follow the superintendent's commands. 982 F.2d at 953. Plaintiff also cites to *Sowards v. Loudon County, Tennessee*, in which sheriff's department employees retaliated against the plaintiff because the plaintiff's husband was a candidate for sheriff. 203 F.3d 426, 430–31 (6th Cir. 2000). Finally, Plaintiff cites to *Gray v. Bruneau-Grand View School District No. 365*, in which a school district retaliated against a plaintiff after the plaintiff's husband objected to a school district policy. No. CV-06-069-S-BLW, 2007 WL 1381785, at \*1 (D. Idaho Mar. 27, 2007). In all of these cases, as in *Adler*, it was the plaintiff's spouse's conduct—e.g., the spouse's failure to follow the superintendent's requests, the spouse's candidacy for sheriff, or the spouse's objection to a district policy—that led defendants to retaliate against the plaintiff. Here, Plaintiff has solely alleged that her marriage to Mr. Wakeman was the reason Defendant allegedly retaliated against her. (Doc. 21 at ¶ 19). Plaintiff has not cited, and the Court has not found, any case where retaliation based solely on a marriage—and not the conduct of a spouse—has been found to violate a right to intimate association. Thus, Plaintiff has failed to show that her rights were clearly established.

The Court finds that, regardless of whether Plaintiff has established a violation of her Fourteenth Amendment right to intimate association, Defendant is entitled to qualified immunity on this claim because Plaintiff's rights were not clearly established at the time of Defendant's alleged retaliation.

### 2. Right to Marry

Plaintiff also asserts that Defendant's alleged retaliation against Plaintiff on the basis of her marriage violated her constitutional right to marry. (Doc. 21 at 8–9). Defendant again argues that he is entitled to qualified immunity because Plaintiff's right to marry was not clearly established in this specific factual context. (Doc. 23 at 13).

The Supreme Court has recognized that the right to marry is part of the fundamental "right of privacy" implicit in the Fourteenth Amendment's Due Process Clause. *Zablocki*, 434 U.S. at 384. "While the outer limits of [the right of personal privacy] have not been marked by the [Supreme] Court, it is clear that among the decisions that an individual may make without unjustified government interference are personal decisions 'relating to marriage . . . .'" *Id.* at 385. However, in order to implicate the right to marry, a plaintiff must demonstrate that a defendant's action directly and substantially impaired that right. *See Parsons v. Del Norte Cty.*, 728 F.2d 1234, 1237 (9th Cir. 1984) (per curiam) ("Only when a government regulation directly and substantially interferes with the fundamental incidents of marriage is such strict scrutiny applicable. Where fundamental rights are not substantially burdened the regulation will be upheld unless there is no rational basis for its enactment." (citing *Zablocki*, 434 U.S. at 386; *Califano v. Jobst*, 434 U.S. 47, 53–54 (1978))).

The Supreme Court has "intimated that conduct less than 'a direct legal obstacle' to an individual's choice to marry did not trigger a fundamental right" to marry. *Quiroz*, 85 F. Supp. 3d at 1111. In cases in which the Supreme Court has recognized a "substantial burden" on the right to marry, the government regulation at issue has been a complete ban on marriage. *See, e.g.*, *Obergefell v. Hodges*, 135 S. Ct. 2584, 2604 (2015) (holding that statutes banning same-sex marriage substantially burdened the plaintiff's

right to marry); *Zablocki*, 434 U.S. at 384 (holding that a statute forbidding noncustodial parents with child support obligations from marrying without first obtaining court permission substantially burdened the plaintiff's right to marry); *Loving v. Virginia*, 388 U.S. 1 (1967) (holding that a statute prohibiting all interracial marriage substantially burdened the plaintiff's right to marry).

Here, Plaintiff's right to marry was not clearly established given the specific facts of this case. Plaintiff has cited to no case law indicating that Defendant's allegedly retaliatory action substantially burdened Plaintiff's right to marry. To the contrary, case law appears to recognize no substantial burden in cases where government action simply "touches upon the incidents of marriage" rather than prohibiting marriage. *Parsons*, 728 F.2d at 1237; *see also Jobst*, 434 U.S. at 58 (holding no substantial interference with the plaintiff's right to marry where the government terminated a disabled dependent child's Social Security benefits after plaintiff married someone ineligible for benefits). Moreover, Plaintiff has failed to state any facts indicating any burden on—let alone the dissolution of—Plaintiff's marriage to Mr. Wideman. Thus, under these facts, Plaintiff has failed to show that her rights were clearly established.

The Court finds that, regardless of whether Plaintiff has established a violation of her Fourteenth Amendment right to marry, Defendant is entitled to qualified immunity on this claim because Plaintiff's rights were not clearly established at the time of Defendant's alleged retaliation.

### 3. Right to Privacy

Plaintiff finally asserts that Defendant's alleged retaliation against Plaintiff violated her constitutional right to privacy. (Doc. 21 at 8–9). Defendant again argues that he is entitled to qualified immunity because Plaintiff's right to privacy was not clearly established in this specific factual context. (Doc. 23 at 13).

The Supreme Court has recognized a right to privacy implicit within the Fourteenth Amendment's Due Process Clause. *Griswold v. Connecticut*, 381 U.S. 479, 485–86 (1965). The Court has since recognized that the right to privacy

involves "at least two different kinds of interests." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id.* at 599–600; *see also Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977). The first interest—a right to informational privacy—is the interest at issue here. Since *Whalen* and *Nixon*, however, the Supreme Court "has said little else on the subject of an individual interest in avoiding disclosure of personal matters." *NASA v. Nelson*, 562 U.S. 134, 135 (2011).

Case law on the issue of privacy interests related to the disclosure of personal information is "murky at best." *O'Phelan v. Loy*, Civil No. 09-00236 SOM/KSC, 2011 WL 719053, at *11 (D. Haw. Feb. 18, 2011). The Ninth Circuit has recognized a right to informational privacy in a number of factual circumstances. *See, e.g.*, *Planned Parenthood of S. Ariz. v. LaWall*, 307 F.3d 783, 789–90 (9th Cir. 2002) (recognizing a female minor's protected privacy interest in her pregnancy status as part of a judicial bypass proceeding used as an alternative to parental consent); *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999) (recognizing a protected privacy interest in social security numbers); *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269–70 (9th Cir. 1998) (recognizing a protected privacy interest for an employer's nonconsensual preemployment blood test); *Doe v. Attorney Gen. of the U.S.*, 941 F.2d 780, 796 (9th Cir. 1991) (recognizing a protected privacy interest for a physician's HIV-AIDS status); *Thorne v. City of El Segundo*, 726 F.2d 459, 468–69 (9th Cir. 1983) (recognizing a police officer's protected privacy interest in answers given during a polygraph examination on the subject of abortions and the identity of past sexual partners). Where there is no previously recognized protected privacy interest, the Ninth Circuit has noted that "if the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered 'clearly established' at least in the absence of closely corresponding factual and legal precedent." *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989) (quoting *Myers v.*

1  *Morris*, 810 F.2d 1437, 1462 (8th Cir. 1987)).

2  Here, Plaintiff has cited to no cases and no facts implicating a protected privacy
3  interest. Plaintiff claims a privacy interest in the existence of her marriage, which is a
4  matter of public record. *See generally Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494–95
5  (1975) (recognizing that an interest in privacy fades when information is in the public
6  record). Moreover, Plaintiff has not cited to any case recognizing a protected privacy
7  interest for one's marital status. Thus, under these facts, Plaintiff has failed to show that
8  her rights were clearly established.

9  The Court finds that, regardless of whether Plaintiff has established a violation of
10 her Fourteenth Amendment right to privacy, Defendant is entitled to qualified immunity
11 on this claim because Plaintiff's rights were not clearly established at the time of
12 Defendant's alleged retaliation.

13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** the Clerk of the Court shall strike Defendant's Exhibit 1 (Doc. 23-1).

**IT IS FURTHER ORDERED** the Court **DENIES** Defendant's Motion to Strike Portions of Plaintiff's First Amended Complaint (part of Doc. 23).

**IT IS FURTHER ORDERED** the Court **DENIES** Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 41(b) (part of Doc. 23).

**IT IS FURTHER ORDERED** the Court **GRANTS** Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (part of Doc. 23). The Clerk of the Court shall enter judgment of dismissal with prejudice.

Dated this 5th day of December, 2016.

James A. Teilborg
Senior United States District Judge